**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

**JACOB HOWARD,**

      **Plaintiff,**

**v.**                                       **1:26-cv-01973-GJF-JMR**

**VALENCIA COUNTY BOARD OF**
**COUNTY COMMISSIONERS; and**
**DEPUTY NOAH ODELL,**

      **Defendants.**

**FIRST AMENDED COMPLAINT FOR DAMAGES FOR DEPRIVATION OF FOURTH AMENDMENT RIGHTS AND RIGHTS UNDER THE NEW MEXICO CONSTITUTION**

Plaintiff Jacob Howard, by and through undersigned counsel, The Kennedy Law Firm, P.C. (Joseph P. Kennedy and Shannon L. Kennedy), and for his First Amended Complaint against Defendants Valencia County Board of County Commissioners and Deputy Noah Odell alleges as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff Jacob Howard ("Plaintiff" or "Howard") is a natural person and resident of Valencia County and at all relevant times was living at 5 Rainbow View Road in Belen, New Mexico. On May 14, 2026, Plaintiff was located in his residence.

2. Defendant Valencia County Board of County Commissioners ("Valencia County" or the "County") is a political subdivision of the State of New Mexico.

3. Noah Odell ("Dep. Odell") is a Sheriff's Deputy with Valencia County. At all times material, he was acting in the course and scope of his employment and under color of state law.

4. Plaintiff Jacob Howard brings this Complaint pursuant to the 28 United States Code Section 1983 and the New Mexico Civil Rights Act, NMSA 1978 § 41-4A-1 et seq., seeking damages for the violations of Plaintiff's constitutional rights.

5. This Court has subject matter jurisdiction of the federal claim pursuant to 28 United States Code Section 1343 and subject matter jurisdiction of the state claims pursuant to the doctrine of pendent jurisdiction. Personal jurisdiction is proper since all parties reside or were employed at all material times in Valencia County, State of New Mexico. Additionally, Valencia County Board of County Commissioners and Deputy Noah Odell's actions giving rise to Plaintiff's claims took place within Valencia County, New Mexico.

## FACTUAL ALLEGATIONS

6. On May 14, 2026, at or around 11:20 a.m., Dep. Odell was dispatched to 5 Rainbow View Road in Belen, New Mexico, regarding a welfare check.

7. Upon arrival, Dep. Odell made contact with Howard at the gate to his property and informed him that he was there to perform a welfare check upon the request of Howard's ex-wife and mother of his children, Saada Alexander ("Ms. Alexander"), who had expressed to the police the "filthy" nature of the house. (Odell lapel at 0:00:00-0:00:33).

8. On May 14, 2026, no children were present in Plaintiff's home. No children were expected to be in Plaintiff's home. Deputy Odell knew that no children were present or would be present in Plaintiff's home.

2

9. Dep. Odell asked Howard if he could search inside the home, to which Plaintiff responded "Absolutely not. You're not going to touch my house right now but thank you." (*Id.* at 0:00:33-38).

10. Dep. Odell informed Howard that this was part of a Children, Youth, and Families Department ("CYFD") investigation. Plaintiff responded that he understood. (*Id.* at 0:00:38-41).

11. Dep. Odell then stated that if Howard interfered with a CYFD investigation, he would be arrested. (*Id.* at 0:00:42-46).

12. Plaintiff raised his concerns and confusion, asking "You're going to take me to jail if I don't let you come in my house right now? Without a warrant?" (*Id.* at 0:00:48-50).

13. Plaintiff stated again that he was certain a warrant was needed, to which Dep. Odell responded, "it's not true" (*Id.* at 0:00:58-00:01:01).

14. Dep. Odell asserted again that CYFD requested a welfare check on the house, despite Howard questioning why it couldn't wait until his children were with him (*Id.* at 0:01:20-01:34).

15. Dep. Odell asked Howard why he didn't want him to come inside the house and if it was because it's "in bad shape." Howard responded that there was trash in the residence because he's waiting for a trash pick-up. (*Id.* at 0:01:45-01:59).

16. Dep. Odell then asked Howard if it was true that he had been making statements about committing suicide on camera, which had been reported by Ms. Alexander. Howard denied that assertion (*Id.* at 0:02:22-2:46).

3

17. Dep. Odell entered Howard's driver license information into his unit's Mobile Data Computer (*Id.* at 0:03:00-4:40).

18. Dep. Odell exited his unit and asked Howard again if he'll let him search the residence. Howard stated that the residence had trash in it and that he had just lost his job so he couldn't afford his bills, but had another one lined up. (*Id.* at 0:05:00-5:25).

19. Dep. Odell stated that he needed to investigate the premises to ascertain if there was electricity, running water, and food (*Id.* at 0:05:38-5:48).

20. Plaintiff expressed that he had not been notified CYFD was conducting an investigation (*Id.* at 0:06:24-6:27).

21. Plaintiff asked Dep. Odell what law allows him to search the property without a warrant. Dep. Odell responded there is a statute permitting interference with a CYFD investigation. Howard expressed he wanted to read the statute (*Id.* at 0:06:36-6:49).

22. Dep. Odell retrieved the statute information from his Mobile Data Computer (*Id.* at 0:06:50-11:57).

23. Dep. Odell instructed Howard to search on his smartphone NMSA 1978, Section 30-6-4 Obstruction of Reporting or Investigating Child Abuse or Neglect. (*Id.* at 0:11:57-12:19).

24. Dep. Odell asked Plaintiff if he would unlock to gate to allow for the search (*Id.* at 0:13:41-13:44).

25. Plaintiff's father arrived on scene and asked Dep. Odell if he had a warrant and why Dep. Odell could search the premised without one. Dep Odell requested Plaintiff's father to stand aside. Plaintiff's father returned to his truck (*Id.* at 0:14:15-15:15).

26. Howard opened the gate (*Id.* at 0:15:42-15:50).

4

27. Plaintiff opened his gate only because of and under the threat of arrest if he did not.

28. Howard led Dep. Odell around the side of his property, and they entered through the back door of his house (*Id.* at 0:15:55-16:40).

29. Dep. Odell searched the kitchen, then followed Howard down a hallway to inspect the bedrooms.

30. Dep. Odell requested Howard wait in the kitchen as he took photos of the rest of the house (*Id.* at 0:17:33-20:29).

31. Dep. Odell requested to then speak with Howard outside and expresses to him that the home "is not a suitable situation for kids (*Id.* at 0:20:29-21:08).

32. Dep. Odell informed Howard that Ms. Alexander had filed for an emergency custody agreement (*Id.* at 0:21:22-21:42).

33. Howard stated that the house would be cleaned by the next time his children arrived (*Id.* at 0:21:47-21:50).

34. Dep. Odell stated that he needed to make phone calls. Howard let him out through the gate (*Id.* at 0:21:51-22:20).

35. Dep. Odell called CYFD Statewide Central Intake from inside his unit to be connected with Jacklyn, the CYFD caseworker assigned to the incident (*Id.* at 0:23:23-24:14).

## CLAIMS FOR RELIEF

### COUNT I:
### Unreasonable Entry into and Search of Home

36. Plaintiff incorporates paragraphs 1–33 as if fully set forth herein.

37. The individual defendant, acting under color of law and within the scope of his duties, searched Plaintiff's home without the possession of a search warrant.

5

38. Plaintiff had an expectation of privacy in his home.

39. Valencia County is liable under the NMCRA for the acts of its deputies in depriving Plaintiff of his state constitutional rights.

40. The search of Plaintiff's home was without a warrant and without exigency.

41. The search of Plaintiff's home was accomplished only because of the threat of an arrest.

42. In other words, any consent that Plaintiff gave to the search of his home was coerced.

43. The warrantless search of Plaintiff's home deprived him of his Fourth Amendment right to be free of unreasonable searches.

44. The warrantless search of Plaintiff's home also deprived him of his right to be free of unreasonable searches under Article II, Section 10 of the New Mexico Constitution made actionable under the New Mexico Civil Rights Act.

45. Valencia County is liable under the NMCRA for the acts of its deputies in depriving Plaintiff of his state constitutional rights.

## **DAMAGES**

As a direct and proximate result, Plaintiff suffered mental and emotional distress and humiliation, and loss of a valuable right to privacy in his home.

The actions of the individual defendant, Dep. Odell, was clearly contrary to constitutional protections related to the home. Defendant Odell also showed a conscious and reckless disregard of the rights and dignity of Plaintiff. Plaintiff requests punitive damages in an amount to be determined by a jury.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor

and against Defendant as follows:

a.  Compensatory damages in an amount to be determined at trial;

b.  Punitive damages against the individual defendant;

c.  Attorney's fees and costs as authorized by 42 U.S.C. § 1988 and the NMCRA;

d.   Pre-judgment and post-judgment interest as allowed by law; and

e.  Such other and further relief as the Court deems just and proper.


Respectfully Submitted,

**THE KENNEDY LAW FIRM, P.C.**

***/s/ Joseph P. Kennedy***
Joseph P. Kennedy
Shannon L. Kennedy
P.O. Box 26776
Albuquerque, NM 87125-6776
P: 505-244-1400 | F: 505-244-1406
jpk@civilrightslaw.com
slk@civilrightslaw.com
*Attorneys for Plaintiff*